FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

2007 NOV 15

PATRICK E. DUFFY, CLERK
BY _____
DEPUTY CLERK

| UNITED STATES OF AMERICA, | ) | CR-07-65-BLG-JDS |
| --- | --- | --- |
| Plaintiff, | ) | CR-07-66-BLG-JDS |
| | ) | |
| vs. | ) | |
| | ) | ORDER ON MOTION TO SUPPRESS |
| | ) | STATEMENTS |
| MARLON DEAN RED STAR, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Presently before the Court is Defendant Marlon Dean Red Stars's (hereinafter "Defendant") Motion to Suppress Statements. Defendant's Motion to Suppress concerns statements made by Defendant to FBI agents during a pre-arranged interview at the FBI offices in the Western Security Bank Building in Billings, Montana . Defendant faces charges of aggravated sexual abuse of a minor involving two victims. On Wednesday October 31, 2007, the Court held an evidentiary hearing in this matter. The Court heard testimony from FBI Special Agent Ernest H. Weyand ("Agent Weyand"), Professor Jeffrey M. Sanders ("Professor Sanders") and Defendant.

## FACTS

On April 5, 2007 at 6:05 pm, Agent Weyland interviewed Defendant at the Western Security Bank Building. Agent Weyland testified that he met previously with Defendant's Aunt and left his telephone number for Defendant. The interview was pre-arranged and scheduled by telephone, with the Defendant agreeing to meet at Agent Weyland's office. Defendant drove

himself to the interview. Upon arriving, Agent Weyand testified that Defendant was informed that he was not under arrest and free to leave at any time. He was also informed that he did not have to answer any questions and could terminate the interview at any time. The interview ended at approximately 7:05 pm at which time Defendant was asked to provide a tape recorded or written statement with respect to the disclosures he made during the interview. Agent Weyand testified that Defendant's mood was, "measured and normal", there was no use of force or a weapon and that Defendant made no indications that he did not understand that he was free to leave. Agent Weyand further stated that Defendant was advised that any statement he made was purely voluntary and could be used against him. Defendant agreed to give a tape recorded statement which took approximately 15 minutes. Defendant was never read his Miranda rights.

## DISCUSSION

Defendant argues that the statements ought to be suppressed because he was never read his Miranda rights. Defendant asserts that, because he is naive and lacks formal education, he was manipulated by the FBI Agents into believing that he was required to report to the interview. Further, Defendant points out that he was led through three locked doors which, he argues, supports a finding of a custodial search. Defendant elicited the testimony of Professor Sanders who testified, in effect, that in certain Native American societies the FBI has a greater power of intimidation. Professor Sanders stated that certain Native American cultures are disinclined to be oppositional to questioning by the FBI. Professor Sanders suggested that Native Americans may simply comply, "so they can get out of there." Professor Sanders also suggested that certain symbols or emblems such as the seal of the United States or FBI present during the interview might further tend to intimidate Native Americans.

The Government counters that the statements sought to be suppressed by Defendant are

admissible because Defendant volunteered them and he was not in custody. Therefore, there was no "custodial interrogation" which would require a Miranda warning.

"It is the premise of Miranda that the danger of coercion results from the interaction of custody and official interrogation." Illinois v. Perkins, 496 U.S. 292, 297 (1990). Therefore, a defendant must be in "custody" before a Miranda warning is necessary.

The question of whether or not a defendant was in "custody" is answered by reviewing the totality of facts involved at the time of the alleged restraint. U.S. v. Booth, 669 F.2d 1231, 1234 (9th Cir.1981). The court must determine whether a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave. *See* United States v. Patterson, 648 F.2d 625, 632 (9th Cir. 1981); United States v. Scharf, 608 F.2d 323, 325 (9th Cir. 1979); United States v. Luther, 521 F.2d 408, 410 (9th Cir. 1975) (per curiam); Lowe v. United States, 407 F.2d 1391, 1397 (9th Cir. 1969). Handcuffing a suspect does not necessarily dictate a finding of custody. United States v. Purry, 545 F.2d 217, 220 (D.C.Cir.1976). Strong but reasonable measures to insure the safety of the officers or the public can be taken without necessarily compelling a finding that the suspect was in custody. *See* United States v. Coades, 549 F.2d 1303, 1305 (9th Cir. 1977).

The Court finds Agent Weyand's testimony credible. Defendant freely arrived at Agent Weyand's office on his own volition. He was told in no uncertain terms that he could leave at any time. Defendant was advised that his statements could be used against him. No evidence suggested that Defendant did not understand Agent Weyand's admonishment or that he was threatened or coerced. The fact that Agent Weyand's office was somewhat secure does not require a finding that Defendant was in custody or that his statements were involuntary. The Court is not persuaded by the testimony of Professor Sanders which suggests that Defendant was

unduly intimidated or coerced by virtue of his ethnicity.

Consequently, the Court finds that the statements given by Defendant were voluntary and did not rise to the level of a custodial search sufficient to warrant a Miranda warning.

For the foregoing reasons, IT IS HEREBY ORDERED that, Defendant's Motion to Suppress Evidence (*Doc.* # 18) is **DENIED.**

The Clerk of Court shall notify the Parties of the making of this Order.

Dated this 15th day of November, 2007.

/s/ Jack D. Shanstrom
JACK D. SHANSTROM
SENIOR U.S. DISTRICT JUDGE